**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Bonifacio J. Perez,<br><br>      Plaintiff,<br><br>  vs.<br><br>Town of Bluffton, a municipal corporation; Bluffton Police Department, an agency of the Town of Bluffton; and Joseph Babkiewicz, individually and in his official capacity as Chief of Police of the Bluffton Police Department,<br><br>      Defendants. | C/A No.:__9:26-cv-3219-RMG-MHC<br><br><br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

Plaintiff Bonifacio J. Perez ("Plaintiff" or "Sgt. Perez"), by and through his undersigned attorneys, Burnette Shutt & McDaniel, PA, hereby files this Complaint against Defendants Town of Bluffton, South Carolina ("the Town"), Bluffton Police Department ("BPD"), and Joseph Babkiewicz ("Chief Babkiewicz") (collectively, "Defendants"), and in support thereof alleges as follows:

## NATURE OF THE ACTION

1. This action arises from the retaliatory, discriminatory, and malicious termination of Sgt. Bonifacio J. Perez, a decorated fourteen-year veteran of the Bluffton Police Department and one of only two Hispanic-American officers to hold numerous leadership positions within BPD, after he exercised his First Amendment rights by opposing the appointment of Defendant Babkiewicz as Chief of Police during a formal selection process, and by associating with other officers disfavored by Chief Babkiewicz.

1

2.    Following his appointment as Chief in December 2022, Defendant Babkiewicz embarked on a campaign of retaliation against officers who had supported former Chief Stephenie Price—whom Babkiewicz blamed for his prior demotion—and those who opposed his candidacy.

3.    Babkiewicz maintained what witnesses have described as a "hit list" of officers who supported Chief Price, and subjected Plaintiff and his close associate, Captain Scott Chandler, to escalating acts of harassment and professional isolation.

4.    In August 2024, Defendant Babkiewicz summarily terminated Plaintiff's employment based on pretextual allegations arising from another employee's mishandling of surrendered firearms.

5.    This termination was done despite the fact that Plaintiff was not involved in that mishandling of surrendered firearms, Plaintiff had zero prior disciplinary history in fourteen years of exemplary service, and multiple other officers involved in the same incidents received no discipline whatsoever.

6.    Defendant Babkiewicz simultaneously orchestrated a criminal prosecution against Plaintiff for "Misconduct in Office" (Beaufort County Case No. 2024GS07001520).

7.    On September 25, 2025, a jury unanimously acquitted Plaintiff of all charges after approximately twenty to thirty minutes of deliberation and with the jury foreperson later indicating the verdict was unanimous within six minutes.

8.    Subsequently, on information and belief, a Hearing Officer appointed in connection with the South Carolina Criminal Justice Academy certification proceedings recommended that the misconduct allegation be expunged from Plaintiff's certification file, finding that because BPD declined to prosecute the misconduct allegation, there was

2

no valid contested case, no basis to sustain the allegation, and no legal basis to hold Plaintiff responsible for misconduct.

9.     Despite Plaintiff's complete exoneration, the Town of Bluffton has refused to reinstate Plaintiff, reverse his termination, or take any meaningful steps to remedy the significant professional, financial, and reputational harm caused by Defendants' actions.

10.     Plaintiff Bonifacio Perez now brings this Complaint against Defendants for the following causes of action.

## **PARTIES, JURISDICTION, & VENUE**

11.     Plaintiff is a citizen and resident of Beaufort County, South Carolina.

12.     Plaintiff was an employee of the Bluffton Police Department in Beaufort County, South Carolina.

13.     Defendant Town of Bluffton is a municipal corporation organized under the laws of the State of South Carolina and is located in Beaufort County, South Carolina.

14.     Defendant Bluffton Police Department is a department and agency of the Town of Bluffton and is located and operates in Beaufort County, South Carolina.

15.     This suit is brought against Defendant Joseph Babkiewicz in his official and individual capacities. Upon information and belief, Defendant Babkiewicz is a citizen and resident of Beaufort County, South Carolina. He is a natural person who, at all times relevant hereto, served as Chief of Police of the Bluffton Police Department. In his individual capacity, he is liable for his personal participation in the constitutional violations alleged herein. In his official capacity, suit against him is treated as suit against the Town. At all times relevant hereto, Defendant Babkiewicz acted under color of state law.

3

16.    Jurisdiction and venue are proper in the Beaufort Division, as Beaufort County is where Plaintiff worked for Defendants and where the majority of the allegations herein took place.

17.    This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under 42 U.S.C. § 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

18.    This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367, as such claims arise from a common nucleus of operative fact with Plaintiff's federal claims.

19.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in Beaufort County, South Carolina, which is within this judicial district.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Exemplary Career at Bluffton Police Department

20.    Plaintiff was hired by the Bluffton Police Department on April 6, 2010, as a sworn Police Officer. He graduated from the South Carolina Criminal Justice Academy that same year.

21.    In 2011, approximately one year after beginning road patrol, Plaintiff was selected as a narcotics investigator and assigned to the Beaufort County Drug Task Force—serving as BPD's representative on the county-level team—where he served for over two years.

22.    In the role outlined in Paragraph 21, Plaintiff worked extensively with federal agencies, including the Federal Bureau of Investigation ("FBI"), and received a letter of

4

commendation from the FBI for his role in breaking up a large-scale interstate car theft and "chop shop" ring.

23.    In 2014, Plaintiff was promoted to Master Police Officer (the equivalent of Corporal).

24.    In 2017, Plaintiff was promoted to Sergeant, assuming command of a road patrol squad.

25.    Plaintiff subsequently served as a School Resource Officer (SRO) Supervisor, overseeing all school-based policing operations.

26.    From approximately 2021 through Plaintiff's termination in August 2024, Plaintiff served in an extraordinarily broad range of leadership and specialist roles, including: Recruiting Sergeant; Public Information Officer (PIO); Accident Reconstruction Team member; instructor in eight different areas (including driving, ATV, and Taser); Internal Affairs investigator; and translator for the Department.

27.    All of Plaintiff's annual evaluations in those fourteen years identified his efforts as "exceeding expectations."

28.    Plaintiff received multiple awards and commendations, including but not limited to: Formal Letters of Commendation Life Saving Award, Officer of the Year Award, Leadership Award, Community Policing Award and Chief of Police Special Recognition Award.

29.    In his over fourteen years of service to the Bluffton Police Department, until the events leading to his termination, Plaintiff was not ever given verbal discipline.

30.    In his over fourteen years of service to the Bluffton Police Department, until the events leading to his termination, Plaintiff was not ever given written discipline.

31.     In his over fourteen years of service to the Bluffton Police Department, until the events leading to his termination, Plaintiff received no adverse personnel actions of any kind.

32.     Plaintiff is, on information and belief, one of only two Hispanic-American officers to be selected for multiple leadership and specialist roles within BPD at the time of his termination.

33.     In his fourteen years of service to the Bluffton Police Department, Plaintiff worked for six permanent Police Chiefs, and two interim Police Chiefs, with Chandler serving as interim three times.

34.     When he was terminated in August of 2024, Plaintiff did not supervise any other Bluffton Police Department employees, to include any civilians.

### B.  Chief Selection Process

35.     In or about 2022, the Town of Bluffton conducted a formal selection process to hire a new Chief of Police. The process included multiple interview panels: a Law Enforcement Panel of seven members, a Community Panel, and a Council Panel.

36.     In 2022, Plaintiff was selected to serve on the Bluffton Police Department's "Law Enforcement Panel" with six other Officers.

37.     Plaintiff did not have policymaking duties that include selecting or hiring police chiefs. Service on this panel was outside his ordinary job duties.

38.     Plaintiff was acting as a representative evaluator and not a decision-maker.

39.     Members of the Law Enforcement Panel reviewed applications, conducted interviews of the candidates, and made recommendations to assist in selecting the next Chief of Police for the Bluffton Police Department.

40.     In 2022, Defendant Babkiewicz applied for the Bluffton Chief of Police position and was one of the candidates who was considered by the Law Enforcement Panel.

41.     In 2004, while working as a police officer with Bloomfield Police Department, Defendant Babkiewicz was disciplined through a suspension.

42.     Based on his actions while working as a police officer for Bloomfield Police Department, Defendant Babkiewicz was named as a defendant in *Roberts v. Babkiewicz*, 582 F.3d 418 (2d Cir. 2009), which alleged that Defendant Babkiewicz used excessive force against Mr. Roberts in 2004 while Mr. Roberts was in Babkiewicz's custody.

43.     Babkiewicz was the subject of an internal investigation by the Town of Bluffton's Human Resources in 2009.

44.     This investigation into Babkiewicz was because he failed to list the lawsuit referenced above on his application for the Bluffton Police Department in 2008.

45.     In 2021, while employed as a police officer with the Bluffton Police Department, Defendant Babkiewicz also worked in a side business.

46.     While working for a side business to move a hot tub, Babkiewicz revised an elderly customer's quote up by $750 without consulting the business owner.

47.     Because the above acts led to a lack of trust in Babkiewicz, the Business Owner, J. Fay (a fellow law enforcement officer), terminated Babkiewicz's employment.

48.     Defendant Babkiewicz was also a defendant in *Joseph Sun v. Bluffton Police Department*, 2020 WL 2066241, at *1 (Apr. 29, 2020 S.C. Ct. App.), which claimed that Babkiewicz and others "were fraudulent in [the] arrest" of Mr. Sun.

49.     Defendant Babkiewicz had also previously been demoted by former Chief

Stephenie Price from the rank of Captain to the rank of Sergeant.

50.     The above demotion was based on a pattern of conduct, which, upon information and belief, included:

(a) On March 5, 2021, Babkiewicz delayed notifying command about a high-profile murder.

(b) Babkiewicz neither responded to the scene nor ensured that a higher-ranking officer was overseeing the investigation.

(c) Later, Babkiewicz admitted that he had been drinking and had a migraine at the time.

(d) Babkiewicz initially refused Chief Price's directive to adjust patrol lieutenant shift schedules.

(e) Babkiewicz allowed the Criminal Investigations Division to leave during a severe weather event.

51.     Additionally, upon information and belief, Babkiewicz was placed on a ninety-day probation on or about 2017.

52.     This probation was tied to an incident that happened on December 8, 2016, when Babkiewicz led Bluffton investigators to an unauthorized arrest in Sea Pines, Hilton Head Island (Beaufort County jurisdiction) without properly coordinating with the Beaufort County Sheriff's Office.

53.     Deputy Chief Joseph Manning later stated that Babkiewicz misinterpreted state law and failed to ensure a deputy was present.

54.     As a result, Babkiewicz was placed on 90-day probation.

55.     Upon information and belief, Babkiewicz was also reprimanded after he was

8

caught on his body camera speaking negatively about another officer, Lt. Gonzalez, to subordinates, which was a clear violation of department policies.

56.     Sean Cecchini was a former supervisor of Babkiewicz's.

57.     In October 2024, Sean Cecchini testified by affidavit about Babkiewicz's conduct and integrity, including allegations of excessive force, misconduct, and discriminatory behavior.

58.     Cecchini recounted a conversation in which Babkiewicz referred to other Officers using racial slurs.

59.     Cecchini detailed how Babkiewicz planned to target Plaintiff by manipulating an investigation, knowing that officers in this region lack union protection or legal defense funds.

60.     Defendant Babkiewicz, at the time of his application for Chief of Police, had about 19 years of experience in law enforcement.

61.     For the year prior to his application, Babkiewicz was not serving as a law enforcement officer and instead worked as a Field Manager for a local construction company.

62.     Approximately 75 applicants from 24 states also applied for the Bluffton Police Department's Chief of Police position.

63.     The Law Enforcement Committee was asked to interview and evaluate the final four candidates.

64.     Candidate JoJo Woodward had over thirty-five years of local law enforcement experience. He served for over twenty years at the Beaufort County Sheriff's Office, rising to the rank of Captain and commander of the Southern Enforcement Branch,

9

Additionally, he served as a deputized U.S. Marshal, DEA task force officer, Co-Chair of the Lowcountry Human Trafficking Task Force, and worked as an investigator for the 14th Circuit Solicitor's Office Career Criminal Unit.

65.     Candidate Ray Crawford had over fifteen years of experience in law enforcement at the time.

66.     Candidate Ray Crawford was serving as the Chief of Police for the City of Blackville, and he had never been named in a lawsuit.

67.     Candidate Brian Hester brought nearly three decades of law enforcement leadership experience to consideration for the position of Chief of Police in Bluffton.

68.     Hester was a South Carolina native raised in Travelers Rest.

69.     Candidate Hester's educational and professional credentials include bachelor's and master's degrees from Clemson University, graduation from the Florida Department of Law Enforcement Criminal Justice Executive Institute, and completion of the FBI National Academy, one of the nation's premier leadership programs for law enforcement executives.

70.     As Chief Deputy, Candidate Hester helped lead an agency of approximately 700 to 760 sworn and civilian personnel serving a county of more than 300,000 residents.

71.     His responsibilities included oversight of major operational and administrative divisions, providing experience managing complex public safety operations, personnel development, budgeting, training, accreditation, and community engagement initiatives.

72.     Throughout his career, Candidate Hester earned numerous honors, including recognition from the Florida Sheriffs Association, the U.S. Attorney General, the

Florida Attorney General, the Florida Narcotics Officers Association, and the American Legion, along with multiple agency awards for exceptional service.

73. Beyond law enforcement, Candidate Hester served on nonprofit and professional boards, including the Boys & Girls Clubs of St. Lucie County, the Treasure Coast Food Bank, and the Florida Department of Law Enforcement Region XI Training Council.

74. Candidate Hester's extensive command experience, broad operational background, advanced education, nationally recognized leadership training, record of professional achievement, and deep commitment to community service were compelling qualifications for leading a Police Department such as Bluffton's.

75. Candidate Hester had not been named in a lawsuit related to his law enforcement duties.

76. During the selection process, Plaintiff was the first to speak up and voice his concerns about Defendant Babkiewicz's fitness for the position of Chief, including Babkiewicz's prior demotion and related conduct issues.

77. Plaintiff supported a more qualified candidate from Florida, Hester.

78. All but one member of the Law Enforcement Panel voted for the Florida candidate.

79. Plaintiff communicated his concerns directly to the Town Manager, Steese, and the director of Human Resources, Evans, during a meeting with the committee, speaking about matters of significant public concern, to include the qualifications and fitness of a candidate to lead the Town's police department.

11

80. In response to the panel's decision, the Town Manager asked the panel to consider who would be the next choice if Hester was not a viable candidate.

81. Plaintiff, and other panelists, then indicated that they supported the next most qualified and experienced candidate, JoJo Woodward.

82. Despite Defendant Babkiewicz's comparatively limited experience relative to other candidates and his prior disciplinary history, and contrary to the near-unanimous recommendation of the Law Enforcement Panel, the Town appointed Babkiewicz as Chief of Police.

83. Rather than selecting a Chief based on merit, experience, and demonstrated leadership ability, the Town's administration chose an individual with minimal executive experience who, upon information and belief, has never passed a Lieutenant's exam and was previously demoted within the same department.

84. The selection resulted in the appointment of a candidate who had demonstrated deficiencies in command capability.

85. On information and belief, the former Mayor of Bluffton, Lisa Sulka, was "a big fan" of Babkiewicz and supported his selection.

86. Defendant Babkiewicz became the Chief of Police on or about December 2022.

C. Defendant Babkiewicz's Campaign of Retaliation

87. By August of 2024, Defendant Babkiewicz terminated Plaintiff's employment.

88. Almost immediately upon becoming Chief, Defendant Babkiewicz began putting restrictions on certain Bluffton police officers who had supported former Chief Price and/or who had opposed his candidacy.

89. On information and belief, Babkiewicz maintained a "hit list" of officers who supported Chief Price.

90. As an example of the restrictions referenced in Paragraph 88, Defendant Babkiewicz announced that officers could no longer ride in cars with each other.

91. As another example of the restrictions referenced in Paragraph 88, Defendant Babkiewicz announced that officers could not eat lunch together at local restaurants or other food establishments, as a way to isolate Plaintiff from other officers.

92. Defendant Babkiewicz created a hostile and intimidating work environment designed to marginalize officers he perceived as disloyal to him.

93. After Plaintiff was placed on administrative leave, Babkiewicz took additional measures to isolate Plaintiff from community activities and professional relationships.

94. Upon information and belief, Babkiewicz directed Captain Burke to tell Plaintiff's then-supervisor, Lt. Danyov, that Plaintiff was prohibited from participating in the Boys & Girls Club of Bluffton's Explorer Program.

95. The Boys & Girls Club of Bluffton's Explorer Program was not sponsored or funded by the Bluffton Police Department; however, Bluffton Police Department SROs assisted with the Program.

96. The Explorer Program encouraged community volunteers to participate.

97. Upon information and belief, the Explorer Program is funded by the Berkeley Hall Club Charitable Foundation.

98. The attempt to exclude Plaintiff from the program further contributed to Plaintiff's feelings of humiliation, isolation, and emotional distress during an already difficult period of his life.

99. None of the actions in Paragraphs 87 to 98 were based on any legitimate law enforcement or administrative purpose.

100. The actions in Paragraphs 87 to 98 were instead motivated by Babkiewicz's personal and retaliatory animus against Plaintiff for his protected speech and association.

D. The Pretextual Investigation and Termination

*Incident 1: April 8, 2024*

101. On April 8, 2024, an individual came into the Bluffton Police Department and surrendered a shotgun.

102. The individual surrendered that shotgun to civilian employee, Rauchfuss, who served as Bluffton Police Department's Civilian Quartermaster.

103. On information and belief, the civilian employee, Rauchfuss, asked the individual if he (Rauchfuss) could keep the shotgun or if the individual wanted the shotgun destroyed.

104. On information and belief, the individual told Rauchfuss that Rauchfuss could keep the shotgun.

105. On information and belief, Rauchfuss did take and keep that shotgun personally.

106. Plaintiff was not present in that area of the building at the time.

14

107. Plaintiff was in his office, which was on the opposite side of the building.

108. Rauchfuss came into Plaintiff's office and asked Plaintiff to let Officer Brown know that he, (Rauchfuss) would handle the call at the front office.

109. At the time, Plaintiff did not know what that call was about.

110. The call was about the individual turning in the shotgun.

111. Plaintiff did call over the radio to Officer Brown and told him that Rauchfuss was handling the call. These calls are recorded.

112. Shortly after the exchange, then-Sergeant Brandon Cooler (who was Officer Brown's supervisor) held the shotgun and talked to Rauchfuss in the main Patrol area of the building.

113. Plaintiff did not supervise Officer Brown or civilian employee Rauchfuss.

114. Despite Plaintiff not being involved with the transfer of the shotgun, Defendant Babkiewicz disciplined Plaintiff for this event, classifying it as a "failure to intervene."

115. Cooler's statements contain inconsistencies between the SLED interview and the IA interview.

116. Additionally, Cooler's sworn testimony at the criminal trial contradicted Officer Brown's sworn account, particularly regarding whether Brown informed Cooler via phone about the call and that Rauchfuss was to handle it.

117. Meanwhile, after that event on April 8, 2024, then-Sergeant Cooler was promoted to Lieutenant and still works for Bluffton Police Department.

118. Lieutenant Cooler is a white male.

***Incident 2: May 8, 2024***

119.    Early morning on May 8, 2024, an individual called the Bluffton Police Department and requested to turn in his pistol.

120.    When that call referenced in Paragraph 119 went out over the Bluffton Police Department radio, Plaintiff mentioned the call to Rauchfuss in passing.

121.    After 2 p.m. on May 8, 2024, four individuals (Sergeant Ferrelli, Captain Chandler, Rauchfuss, and Plaintiff) were eating lunch together when Officer Lindiakos walked in with a gun case.

122.    Rauchfuss got up from the table and walked over to Officer Lindiakos, who was standing in the Patrol area in front of Lieutenant Michelle Mayers' office.

123.    Mayers was in her office and in clear view, sight, and sound of Lindiakos.

124.    While standing in front of Lieutenant Mayers' office, Officer Lindiakos gave the firearm to Rauchfuss, and then he took it to his office.

125.    Rauchfuss returned to the table without the firearm or the gun case.

126.    Officer Lindiakos came to the table and gave Rauchfuss a telephone number.

127.    Upon information and belief, on May 8, 2024, Rauchfuss took the firearm home with him.

128.    Plaintiff left the Police Department for the day before Rauchfuss and was not aware that Rauchfuss took the firearm home.

129.    Chief Babkiewicz and Lt. Mayers watched Rauchfuss leave the police department with the gun case.

130.    On the morning of May 9th, 2024, upon information and belief, Rauchfuss brought the handgun back to the police department with the intent of turning it in.

16

131.    Captain Helen Burke met Rauchfuss in the parking lot, and Rauchfuss turned the handgun over to her.

132.    On May 9, 2024, Plaintiff was in transit to Mexico.

133.    He was not in Bluffton, South Carolina, and did not come into the Bluffton Police Department on that day.

134.    Defendant Babkiewicz directed Lt. Mayers to initiate an investigation into "those four at the table"; however, the investigation was focused disproportionately on Plaintiff.

135.    The Internal Affairs investigation was initially conducted internally but was subsequently referred to the Beaufort County Sheriff's Office ("BCSO").

136.    On or about May 13, 2024, approximately two hours into the workday, Plaintiff was called into Chief's conference room and told by Chief Babkiewicz that he was a target of an internal investigation and told to go home.

137.    Lt. Draisen of BCSO conducted the investigation, which included two in-person interviews, one telephone interview, and a written statement from Plaintiff.

138.    The investigation was plagued by procedural irregularities, including but not limited to:

    a.  **Unauthorized media leaks**: During the investigation, confidential details of the investigation were leaked to the media.

    b.  These media leaks were in direct violation of BPD's Code of Conduct, which prohibits officers from making statements to the media about Department investigations and require all personnel to treat Department business as confidential;

c. **All-Hands meetings disclosing confidential Internal Affairs ("IA") information**: Defendant Babkiewicz held two All-Hands meetings at which he told the entire Department about the ongoing investigation and accused someone of leaking information to the press—thereby further publicizing the confidential investigation to the entire department;

d. **Babkiewicz's improper involvement**: The Chief of Police improperly inserted himself into the review and influence of the IA findings, despite his personal animus toward the subject of the investigation, undermining the impartiality required by BPD SOP #032 (Internal Affairs Investigations);

e. **Deviation from progressive discipline**: BPD SOP #043 (Disciplinary Procedures) mandates that "[d]isciplinary action shall be taken only for just cause" and that "employee misconduct and/or unsatisfactory performance shall be dealt with by the use of progressive corrective discipline."

f. The SOP further provides that dismissals "shall be initiated when all previous progressive corrective discipline procedures have failed to correct the employee's conduct, or the Chief of Police determines that lesser action insufficient due to the seriousness of the offense."

g. Plaintiff had no prior discipline of any kind (no counseling reports, no written reprimands, no suspensions) yet was summarily terminated, bypassing every step of the progressive discipline framework.

*The Termination*

18

139.    On or about August 15, 2024, Plaintiff received notification scheduling a pre-termination hearing for 9:00 AM the following day, providing Plaintiff until 8:00 AM to notify HR Director Anni Evans of his intentions regarding the hearing.

140.    In August 2024, Plaintiff was terminated from the Bluffton Police Department.

141.    Plaintiff's then-Attorney, Ben Shelton sent a letter/email to the Town Manager, in order to start the grievance committee proceedings as provided under BPD SOP #043, Section IV.E.2.

142.    The Town Manager never responded directly to Shelton, he instead copied Shelton on an email forwarding the original letter to the Town Attorney.

143.    On information and belief, the grievance was denied at all necessary levels.

144.    On August 23, 2024, Babkiewicz directed Lieutenant Mayers to submit, to the S.C. Criminal Justice Academy, a "Personnel Change in Status Report: Notification of Separation Due to Misconduct" about Plaintiff.

145.    As a result of the above report, Plaintiff's law enforcement certification was suspended, which resulted in Plaintiff being unable to work in law enforcement or security roles in South Carolina.

146.    Approximately two years later, in April 2026, the Bluffton Police Department finally alerted the S.C. Criminal Justice Academy that it was declining to prosecute the allegation against Plaintiff.

147.    As a result, the Case Hearing Officer ordered Plaintiff's certification file to be expunged.

### E. Grossly Disparate Treatment of Similarly Situated Officers

19

148.	Plaintiff was the **only** Sworn Officer among multiple individuals involved in the same incidents to face termination or criminal charges.

149.	The following individuals were treated markedly differently:

a.	Captain Scott Chandler was present at the lunch table during the May 8 incident.

b.	Captain Chandler was not terminated. He was allowed to retire, and he was not criminally charged.

c.	Sergeant Ferrelli was present at the lunch table during the May 8 incident.

d.	On information and belief, Ferrelli was given a writeup, not for the incident but for making phone calls the night of May 8th, and he was not criminally charged.

e.	Officer Lindiakos was the officer who actually handed the pistol to Rauchfuss during the May 8 incident.

f.	Lindiakos was **not even investigated**, despite being the officer who physically transferred the firearm.

g.	Lindiakos received no discipline and no criminal charges.

h.	Sergeant Cooler (now Lt.) was the Patrol Sergeant and Road Supervisor on duty during relevant events on April 8th. He held the shotgun and was inconsistent in his official statements.

i.	Cooler was not investigated, received no discipline and was not criminally charged.

j. Lieutenant Mayers was the Patrol Lieutenant and Road Supervisor on duty during the relevant events, who was in her office across from where Officer Lindiakos handed Rauchfuss the firearm on May 8.

k. On information and belief, Mayers received no discipline.

150. The only distinguishing characteristic between Plaintiff and these similarly situated individuals was Plaintiff's protected speech opposing Chief Babkiewicz's appointment, his association with Captain Chandler and supporters of former Chief Price, and his Hispanic heritage.

F. The Malicious Criminal Prosecution

151. In connection with the internal investigation, Defendant Babkiewicz initiated and/or caused to be initiated, through SLED, criminal charges against Plaintiff for Misconduct in Office, Beaufort County Case No. 2024GS07001520.

152. The prosecution was handled through the Fourteenth Circuit Solicitor's Office, which brought in the First Circuit Solicitor to prosecute the case.

153. On information and belief, there was no formal appointment of the out-of-circuit solicitor who handled the case.

154. On information and belief, the S.C. Attorney General's Office did not direct or designate this prosecutor who handled the case after the case was conflicted out of the Fourteenth Circuit Solicitor's Office.

155. On information and belief, the court did not direct or supervise the transfer of the case after the case was conflicted out of the Fourteenth Circuit Solicitor's Office.

156. This irregular and extra-statutory assumption of prosecutorial authority constitutes a fundamental defect in the initiation and continuation of the criminal

21

proceedings against Plaintiff.

157.    The absence of proper authorization is evidence that the proceedings were initiated and continued without probable cause and for an improper purpose, including but not limited to shielding conflicted actors and advancing the interests of individuals involved in the underlying dispute.

158.    On September 25, 2025, following a full trial in the Beaufort County Court of General Sessions, a jury unanimously acquitted Plaintiff of all charges, returning a Not Guilty verdict after approximately twenty to thirty minutes of deliberation.

159.    The jury foreperson subsequently indicated that the jury reached a unanimous verdict within six minutes but spent additional time to be thorough.

160.    The criminal prosecution was initiated without probable cause, was motivated by Defendant Babkiewicz's personal animus and retaliatory intent, and resulted in a favorable termination for Plaintiff under *Thompson v. Clark*, 596 U.S. 36, 46 (2022).

G.    Chief Babkiewicz's Own Unreported Misconduct and Double Standard

161.    On or about October 11, 2024, approximately two months after terminating Plaintiff, Defendant Babkiewicz was involved in a motor vehicle collision while operating a BPD patrol vehicle in the Town of Hardeeville, Jasper County, South Carolina.

162.    Babkiewicz did not report the accident at the time, in violation of BPD SOP #018 (Traffic Collision Investigation), Section XIII.B, which requires employees to "immediately report accident/injury to supervisor" and requires that "[a]n accident report must be filed by Law Enforcement Agency."

163.    Further, BPD SOP #018, Section II.F, expressly provides that "BPD Officers

shall be thoroughly familiar with SC State Statute § 56-5-765, and **shall not investigate collisions involving other BPD employees**, whether in a private vehicle, vehicle assigned to BPD or other vehicles. South Carolina Highway Patrol will be notified to investigate any traffic collisions involving BPD employees on or off duty occurring in Bluffton Police Department jurisdiction."

164.    Despite this clear policy, Babkiewicz directed Lt. Mayers—the same Lieutenant who initiated the Perez investigation—to complete an incident report on the collision approximately one month after it occurred.

165.    Lieutenant Mayers had no jurisdiction to complete the report, as the collision occurred in Jasper County, outside BPD's jurisdiction.

166.    No Internal Affairs investigation was initiated into Babkiewicz's failure to report the accident.

167.    On information and belief, the insurance form submitted for the collision appears to have been altered (FR-309 form).

168.    The collision was attributed to "a deer" at approximately 1:00 PM in a suburban area.

169.    A BCSO CAD report (Incident No. 24BP30174) and dispatch records from November 5, 2024, confirm a property damage call at 101 Progressive Street (BPD headquarters), with Lieutenant Mayers listed as the responsible and responding officer.

170.    An FR-50 (Request for Copy of Collision Report) was filed with the South Carolina Department of Motor Vehicles on November 25, 2024, seeking the collision report for Joseph Babkiewicz (DL# 101785411/SC) dated October 11, 2024, in Jasper County. The SCDMV indicated the requested collision report was "currently not on file."

23

171. This episode demonstrates both Defendant Babkiewicz's pattern of selective enforcement and his willingness to violate the very policies he invoked to terminate Plaintiff while shielding himself from any accountability.

H.  Defamatory Publications

172. During the investigation into Plaintiff, Defendant Babkiewicz caused or permitted the unauthorized disclosure of confidential Internal Affairs investigation information to the media, resulting in widespread public reporting of the investigation.

173. During the investigation, Defendant Babkiewicz further disseminated information about the investigation to the entire Bluffton Police Department in at least two All-Hands meetings, publicly discussing the investigation and accusing individuals of leaking to the press.

174. These disclosures were made in violation of BPD Code of Conduct § 9.5 (prohibiting unauthorized statements to the community regarding Department investigations through media channels), § 16.1 (prohibiting statements for publication about Department incidents without consent of the Chief), and § 16.2 (requiring all personnel to treat Department business as confidential).

175. The publications conveyed the false and defamatory impression that Plaintiff had engaged in criminal misconduct (an impression conclusively disproven by his unanimous jury acquittal) and caused severe damage to Plaintiff's professional reputation, standing in the law enforcement community, and personal life.

I. Discriminatory Animus Based on Race and National Origin

176. On information and belief, Defendant Babkiewicz and/or other BPD personnel referred to Plaintiff using a racial or ethnic slur, calling him "the other

24

[spic]," evidencing discriminatory animus based on Plaintiff's Hispanic heritage.

177.    Plaintiff was one of only two Hispanic-American officers with leadership roles within BPD at the time of his termination. The totality of the circumstances, including the racial slur, the unprecedented severity of discipline imposed on Plaintiff compared to similarly situated non-Hispanic officers, the pretextual nature of the charges, and the pattern of targeted harassment, gives rise to a strong inference of racial and ethnic discrimination.

178.    As a direct and proximate result of Defendants' actions, Plaintiff suffered severe emotional distress and significant physical manifestations of that distress.

179.    During the initial months following his removal from duty and subsequent termination, Plaintiff experienced rapid and substantial weight loss, persistent insomnia, loss of appetite, anxiety, humiliation, and emotional anguish.

180.    The stress associated with the investigation, termination, public disclosure of allegations, and criminal prosecution affected nearly every aspect of Plaintiff's daily life and family relationships.

181.    The emotional impact became sufficiently severe that Plaintiff sought professional mental health treatment. Utilizing Employee Assistance Program ("EAP") services that remained available to him during the early stages of these events, Plaintiff began treatment with Dr. Walter J. Warnock of Hilton Head Island, South Carolina. Plaintiff's need for professional counseling and treatment is objective evidence of the significant emotional and psychological harm caused by Defendants' conduct.

<u>MUNICIPAL LIABILITY (MONELL)</u>

182.    Plaintiff repeats and realleges each and every preceding allegation as if fully

25

set forth herein.

183.    Defendant Town of Bluffton is a municipal entity subject to suit under 42 U.S.C. § 1983.

184.    At all times relevant hereto, Defendant Joseph Babkiewicz, as Chief of Police, possessed final policymaking authority with respect to personnel decisions, internal investigations, disciplinary actions, and operational control of the Bluffton Police Department.

185.    The constitutional violations suffered by Plaintiff were caused by and resulted from the official policies, customs, practices, and usages of the Town, including but not limited to:

   a. A policy or custom of retaliating against employees who engaged in protected speech or association in matters of public concern;

   b. A policy or custom of selectively enforcing departmental rules and disciplinary procedures in a discriminatory and pretextual manner;

   c. A policy or custom of initiating, endorsing, or permitting internal investigations and criminal referrals without probable cause and for retaliatory purposes;

   d. A failure to adequately train, supervise, and discipline supervisory officials, including the Chief of Police, regarding constitutional limitations on retaliation, discrimination, and misuse of investigative authority;

   e. A custom or practice of tolerating and ratifying misconduct by high-ranking officials.

186.    The Town, through its appointed officials and policymakers, had actual or

constructive knowledge of Defendant Babkiewicz's prior misconduct, disciplinary history, and demonstrated propensity to engage in retaliatory and improper conduct.

187. Despite this knowledge, the Town made a deliberate and conscious decision to appoint and retain Defendant Babkiewicz as Chief of Police, thereby exhibiting deliberate indifference to the constitutional rights of Plaintiff and other employees.

188. The Town's deliberate indifference is further demonstrated by its failure to intervene, correct, or discipline Defendant Babkiewicz after he engaged in a pattern of retaliatory and discriminatory conduct, including conduct directed at Plaintiff.

189. The Town ratified the unconstitutional conduct of Defendant Babkiewicz by:

   a. Failing to meaningfully investigate complaints and irregularities in the internal affairs process;

   b. Upholding Plaintiff's termination through its grievance procedures;

   c. Declining to take any corrective or disciplinary action against Defendant Babkiewicz;

   d. Permitting the continued dissemination of false and damaging allegations concerning Plaintiff.

190. The policies, customs, and deliberate indifference described herein were the moving force behind the violations of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

191. As a direct and proximate result of the Town's actions and omissions, Plaintiff suffered the damages described herein.

192. Plaintiff demands judgment against Defendant Town of Bluffton for compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and

such other relief as the Court deems just and proper.

## CAUSES OF ACTION

### FOR A FIRST CAUSE OF ACTION
42 U.S.C. § 1983, FIRST AMENDMENT RETALIATION
*(Against All Defendants)*

193.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

194.    Plaintiff engaged in constitutionally protected speech and association, including: (a) voicing concerns about Defendant Babkiewicz's fitness for the position of Chief of Police during a hiring committee process, which was speech on a matter of significant public concern regarding the qualifications of a public official; and (b) associating with Captain Chandler, former Chief Price supporters, and other officers disfavored by Chief Babkiewicz.

195.    Plaintiff did not have policymaking duties that include selecting or hiring police chiefs.

196.    Service on this hiring panel was outside his ordinary job duties.

197.    Plaintiff was acting as a representative evaluator and not a decision-maker.

198.    Under the framework established in *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983), Plaintiff's speech addressed matters of public concern—the fitness and qualifications of a candidate for Chief of Police of a public law enforcement agency—and his interest in speaking outweighed any governmental interest in promoting workplace efficiency.

199.    Defendants took adverse employment actions against Plaintiff, including termination, initiation of criminal charges, and other acts of harassment and retaliation,

28

which would chill a person of ordinary firmness from continuing to engage in protected activity.

200.    Plaintiff's protected speech and association were a substantial and motivating factor in Defendants' adverse actions. The causal connection is established by, among other things: (a) Defendant Babkiewicz's well-known "hit list" targeting officers who supported Chief Price; (b) the temporal proximity between Babkiewicz's assumption of the Chief position and the escalating pattern of retaliatory conduct; (c) the pretextual nature of the investigation and charges; (d) the grossly disparate treatment of Plaintiff compared to similarly situated officers; and (e) the unprecedented severity of discipline imposed on an officer with a spotless fourteen-year record.

201.    Defendant Babkiewicz's actions constitute the policy of the Town of Bluffton because Babkiewicz, as Chief of Police, was the final policymaker with respect to police department disciplinary matters, including termination. Under BPD SOP #043, "[o]nly the Chief of Police can dismiss an employee," and "[s]upervisors may make a recommendation for major discipline, but it is ultimately the Chief of Police who will make the final determination."

202.    Alternatively,     the     Town     of     Bluffton     ratified Defendant Babkiewicz's unconstitutional actions by making no response (and thereby denying) Plaintiff's grievance at all levels, refusing to reinstate Plaintiff after his acquittal, and failing to take any corrective action.

203.    "The general proposition that a government official may not retaliate against a citizen for the exercise of a constitutional right is clearly established law." *Blankenship*

*v. Manchin*, 471 F.3d 523, 533 (4th Cir. 2006). Defendant Babkiewicz is not entitled to qualified immunity.

204. As a direct and proximate result of the First Amendment violations, Plaintiff suffered special damages, including lost wages, lost benefits, loss of career, reputational harm, emotional distress, and attorney's fees and costs.

**FOR A SECOND CAUSE OF ACTION**
42 U.S.C. § 1983, FOURTEENTH AMENDMENT PROCEDURAL DUE
PROCESS
(Against All Defendants)

205. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

206. Plaintiff possessed a constitutionally protected property interest in his continued employment with BPD, arising from: (a) the progressive discipline framework established by BPD SOP #043, which provides that "[d]isciplinary action shall be taken only for just cause" and that dismissals "shall be initiated when all previous progressive corrective discipline procedures have failed to correct the employee's conduct"; (b) BPD's established policies and procedures creating a legitimate expectation of continued employment absent just cause; and (c) the Town's personnel policies and practices.

207. Plaintiff also possessed a constitutionally protected liberty interest in his good name, reputation, and ability to pursue his chosen profession as a law enforcement officer.

208. Defendants' public disclosure of the investigation and criminal charges into Plaintiff, combined with Plaintiff's termination and suspension of his law enforcement certification, imposed a stigma that forecloses Plaintiff's freedom to take advantage of other employment opportunities. This constitutes a "stigma-plus" deprivation of liberty.

30

209. Defendants deprived Plaintiff of these protected interests without adequate pre-deprivation or post-deprivation process, including but not limited to:

a. Providing woefully inadequate notice of the pre-termination hearing (sent the evening of August 15, 2024, for a hearing at 9:00 AM the following day, with a response deadline of 8:00 AM);

b. Allowing the biased decision-maker (Chief Babkiewicz, who harbored personal animus toward Plaintiff) to serve as both investigator and adjudicator;

c. Failing to follow the Department's own progressive discipline procedures;

d. Making a report of misconduct about Plaintiff to the S.C. Criminal Justice Academy; and

e. Denying Plaintiff a meaningful opportunity to be heard before an impartial decision-maker.

210. Defendant Babkiewicz's actions constitute the policy of the Town of Bluffton for the reasons stated in Count I.

211. As a direct and proximate result of the due process violations, Plaintiff suffered special damages, including lost wages, lost benefits, loss of career, reputational harm, emotional distress, and attorney's fees and costs.

**FOR A THIRD CAUSE OF ACTION**
42 U.S.C. § 1983, FOURTEENTH AMENDMENT EQUAL PROTECTION
*(Against All Defendants)*

212. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

213. Defendants intentionally discriminated against Plaintiff on the basis of his race and/or national origin (Hispanic heritage) in violation of the Equal Protection Clause of the Fourteenth Amendment.

214. The evidence of discriminatory intent includes: (a) the use of a racial or ethnic slur to refer to Plaintiff; (b) the grossly disparate treatment of Plaintiff compared to similarly situated non-Hispanic officers involved in the same incidents; (c) Plaintiff's status as one of only two Hispanic-American officers selected for multiple leadership roles within BPD; and (d) the pretextual nature of the investigation and charges.

215. Alternatively, even absent racial animus, Defendants violated Plaintiff's equal protection rights under a "class-of-one" theory by intentionally treating Plaintiff differently from similarly situated officers (Brandon Cooler, Chandler, Ferrelli, Lindiakos, and Mayers) without any rational basis. *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

216. Defendant Babkiewicz's actions constitute the policy of the Town of Bluffton for the reasons stated in Count I.

217. As a direct and proximate result of the discrimination, Plaintiff suffered special damages, including lost wages, lost benefits, loss of career, reputational harm, emotional distress, and attorney's fees and costs.

**FOR A FOURTH CAUSE OF ACTION**
42 U.S.C. § 1983, FOURTH AMENDMENT MALICIOUS PROSECUTION
*(Against All Defendants)*

218. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

32

219.    Defendant Babkiewicz initiated and/or caused to be initiated a criminal prosecution against Plaintiff for Misconduct in Office (Case No. 2024GS07001520).

220.    The irregular and extra-statutory assumption of prosecutorial authority constitutes a fundamental defect in the initiation and continuation of the criminal proceedings against Plaintiff.

221.    The absence of proper authorization is evidence that the proceedings were initiated and continued without probable cause and for an improper purpose, including but not limited to shielding conflicted actors and advancing the interests of individuals involved in the underlying dispute.

222.    The criminal prosecution was initiated without probable cause, as demonstrated by the jury's swift and unanimous acquittal.

223.    The prosecution terminated in Plaintiff's favor.

224.    Defendant Babkiewicz acted with malice and for an improper purpose—namely, to retaliate against Plaintiff for his protected speech and association and/or to punish him based on discriminatory animus.

225.    As a result of the malicious prosecution, Plaintiff suffered a seizure of his person and liberty through the criminal process, including arrest, detention, the burden of defending criminal charges through trial, and the attendant restrictions on his liberty.

226.    Defendant Babkiewicz is not entitled to qualified immunity because the right to be free from malicious prosecution was clearly established at the time of his conduct.

227.    Defendant Babkiewicz's actions constitute the policy of the Town of Bluffton for the reasons stated in Count I.

33

228.    As a direct and proximate result of the malicious prosecution, Plaintiff suffered special damages, including lost wages, lost benefits, loss of career, reputational harm, emotional distress, and attorney's fees and costs.

**FOR A FIFTH CAUSE OF ACTION**
DEFAMATION, State Law
*(Against Defendant Babkiewicz and the Town of Bluffton)*

229.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

230.    Defendant Babkiewicz caused or permitted the publication of false and defamatory statements regarding Plaintiff to third parties, including: (a) the unauthorized disclosure of confidential Internal Affairs investigation details to media outlets; and (b) statements made during at least two All-Hands meetings to the entire BPD workforce regarding the investigation and its subjects.

231.    These publications conveyed the false impression that Plaintiff had engaged in criminal misconduct and was unfit for law enforcement service—an impression conclusively disproven by his unanimous jury acquittal and the Criminal Justice Academy Hearing Officer's recommendation of expungement.

232.    The statements were false, were published with actual malice (knowledge of falsity or reckless disregard for the truth), and were made to third parties who understood the defamatory meaning.

233.    As a direct and proximate result, Plaintiff suffered injury to his reputation, standing in the law enforcement community, emotional distress, and economic harm.

234. To the extent the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 *et seq.*, applies to claims against the Town, Plaintiff acknowledges the statutory limitations thereunder, including the damages cap of S.C. Code Ann. § 15-78-120.

235. Plaintiff's claims against Defendant Babkiewicz in his individual capacity are brought under S.C. Code Ann. § 15-78-70(b), which provides that an employee of a governmental entity is not immune from suit if "it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."

236. As a direct and proximate result of the defamation, Plaintiff suffered special damages, including lost wages, lost benefits, loss of career, reputational harm, emotional distress, and attorney's fees and costs.

## FOR A SIXTH CAUSE OF ACTION
CIVIL CONSPIRACY - State Law
*(Against All Defendants)*

237. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

238. Defendants Babkiewicz and one or more other individuals combined and conspired together for the purpose of injuring Plaintiff by: (a) orchestrating a pretextual investigation designed to result in Plaintiff's termination; (b) initiating criminal charges without probable cause; (c) leaking confidential information to the media to damage Plaintiff's reputation; (d) selectively enforcing departmental policies against Plaintiff while shielding other officers; and (e) refusing to reinstate Plaintiff following his exoneration.

239.   The conspiracy was animated by Defendant Babkiewicz's personal animus toward Plaintiff arising from Plaintiff's protected speech, his associations, and/or his Hispanic heritage.

240.   In furtherance of the conspiracy, Defendants committed the overt acts described herein, each of which constitutes an independent actionable tort.

241.   As a direct and proximate result of the conspiracy, Plaintiff suffered special damages, including lost wages, lost benefits, loss of career, reputational harm, emotional distress, and attorney's fees and costs.

**FOR A SEVENTH CAUSE OF ACTION**
BREACH OF CONTRACT / BREACH OF EMPLOYMENT POLICIES
*(Against the Town of Bluffton and BPD)*

242.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

243.   BPD's Standard Operating Procedures, including SOP #043 (Disciplinary Procedures) and SOP #032 (Internal Affairs Investigations), together with the BPD Code of Conduct and Town personnel policies, created express or implied contractual obligations governing the terms and conditions of Plaintiff's employment, including the requirement that discipline be imposed only for "just cause" and through progressive corrective measures.

244.   Specifically, BPD SOP #043 provides:

   a.  "Disciplinary action shall be taken only for just cause." (§ IV);

   b.  "Generally, employee misconduct and/or unsatisfactory performance shall be dealt with by the use of progressive corrective discipline." (§ IV);

c. Dismissals "shall be initiated when all previous progressive corrective discipline procedures have failed to correct the employee's conduct, or the Chief of Police determines that lesser action insufficient due to the seriousness of the offense." (§ IV.D.1).

245. Defendants breached these contractual obligations by terminating Plaintiff without just cause and without following the required progressive discipline procedures. Plaintiff had zero prior disciplinary actions, yet was summarily dismissed without any prior counseling, written reprimand, or suspension.

246. Defendants further breached their contractual obligations by failing to follow SOP #032's requirements for Internal Affairs investigations, including the Chief's obligation to "defend and protect the reputation of members/employees falsely accused" (SOP #032, Policy Statement).

247. As a direct and proximate result of these breaches, Plaintiff suffered special damages, including lost wages, lost benefits, loss of career, reputational harm, emotional distress, and attorney's fees and costs.

## FOR AN EIGHTH CAUSE OF ACTION
ABUSE OF PROCESS
*(Against Defendant Babkiewicz and the Town of Bluffton)*

248. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

249. Defendant Babkiewicz used the Internal Affairs investigation process and the criminal justice process for an improper purpose, namely, to retaliate against Plaintiff for his protected speech and association, to remove a perceived political adversary from the Department, and/or to punish Plaintiff based on discriminatory animus.

37

250. Defendant Babkiewicz committed a willful act in the use of these processes for improper purposes, including: (a) directing the investigation to focus disproportionately on Plaintiff while shielding similarly situated officers; (b) improperly involving himself in the IA review despite his personal bias; (c) leaking confidential investigation details to the media; and (d) pursuing criminal charges without probable cause.

251. As a direct and proximate result, Plaintiff suffered special damages, including lost wages, lost benefits, loss of career, reputational harm, emotional distress, and attorney's fees and costs.

**FOR A NINTH CAUSE OF ACTION**
MALICIOUS PROSECUTION
*(Against Defendant Babkiewicz and the Town of Bluffton)*

252. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

253. Defendant Babkiewicz instituted and/or procured the institution of criminal proceedings against Plaintiff (Beaufort County Case No. 2024GS07001520) for Misconduct in Office.

254. The irregular and extra-statutory assumption of prosecutorial authority constitutes a fundamental defect in the initiation and continuation of the criminal proceedings against Plaintiff.

255. The absence of proper authorization is evidence that the proceedings were initiated and continued without probable cause and for an improper purpose, including but not limited to shielding conflicted actors and advancing the interests of individuals involved in the underlying dispute.

256.   The criminal proceedings terminated in Plaintiff's favor by unanimous jury acquittal on September 25, 2025.

257.   The prosecution was initiated without probable cause, as demonstrated by the jury's swift acquittal after deliberation of approximately six to thirty minutes.

258.   The prosecution was motivated by malice. Specifically, Defendant Babkiewicz's personal animus, retaliatory intent, and/or discriminatory animus, rather than a genuine belief that Plaintiff had committed a crime.

259.   As a direct and proximate result, Plaintiff suffered the damages described herein, including but not limited to the costs and expenses of defending the criminal prosecution, lost wages, emotional distress, and reputational harm.

**FOR A TENTH CAUSE OF ACTION**
NEGLIGENT SUPERVISION AND RETENTION
(Against Defendant Town of Bluffton)

260.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

261.   At all times relevant hereto, Defendant Town of Bluffton (the "Town") owed Plaintiff and other employees of the Bluffton Police Department a duty to exercise reasonable care in the hiring, retention, supervision, training, and discipline of its employees, including Defendant Chief Joseph Babkiewicz.

262.   The Town knew or, through the exercise of reasonable diligence, should have known that Defendant Babkiewicz was unfit for a supervisory and policymaking role within the Bluffton Police Department and posed a foreseeable risk of harm to subordinate officers, including Plaintiff.

263.   Prior to and during Defendant Babkiewicz's appointment as Chief of Police,

39

the Town had actual or constructive knowledge of his history of misconduct and deficient judgment, including but not limited to:

    a.  Prior disciplinary actions, including suspension, probation, and demotion within a law enforcement agency;

    b.  Involvement as a named defendant in civil litigation alleging excessive force and unlawful arrest;

    c.  Prior internal investigations concerning integrity, disclosure obligations, and compliance with departmental policies;

    d.  Documented incidents reflecting poor command judgment and failure to follow directives;

    e.  Credible allegations of discriminatory, retaliatory, and unprofessional conduct toward other officers.

264.   Upon information and belief, these facts were known to the Town, were reviewed during the hiring process, or would have been revealed through the exercise of reasonable diligence in the Chief selection process.

265.   Notwithstanding such knowledge, the Town negligently hired, appointed, and/or retained Defendant Babkiewicz as Chief of Police, a position vested with final authority over personnel decisions, disciplinary actions, and internal investigations.

266.   The Town further breached its duty by failing to properly supervise, monitor, investigate, or discipline Defendant Babkiewicz after he engaged in a pattern of retaliatory, discriminatory, and improper conduct toward subordinate officers.

267.   The Town knew or should have known that Defendant Babkiewicz was engaging in conduct including:

40

    a. Targeting officers based on protected speech and association;

    b. Selectively enforcing departmental policies;

    c. Initiating and manipulating internal investigations for retaliatory purposes;

    d. Imposing disparate discipline inconsistent with departmental procedures;

    e. Disregarding established internal affairs protocols and due process protections.

268. Despite such knowledge, the Town failed to take reasonable corrective action, thereby permitting Defendant Babkiewicz's unlawful conduct to continue unchecked.

269. As a direct and proximate result of the Town's negligent supervision and retention, Defendant Babkiewicz was able to, and did, engage in wrongful conduct against Plaintiff, including:

    a. Subjecting Plaintiff to a pretextual internal affairs investigation;

    b. Imposing disproportionate and disparate discipline;

    c. Terminating Plaintiff's employment without just cause;

    d. Initiating and/or causing the initiation of a criminal prosecution;

    e. Causing the dissemination of false and damaging allegations concerning Plaintiff.

270. The Town's negligence was a direct and proximate cause of Plaintiff's damages, including loss of employment, loss of earning capacity, reputational harm, emotional distress, and other consequential damages.

186. The Town's conduct, viewed in its totality, constituted a failure to exercise slight care and rose to the level of gross negligence under the circumstances.

187. Defendant Town of Bluffton is liable for Plaintiff's damages pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, et seq.

**FOR AN ELEVENTH CAUSE OF ACTION**
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(Against Defendant Babkiewicz)*

271. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

272. Defendant Babkiewicz's conduct—including maintaining a "hit list," orchestrating a pretextual investigation, causing the termination of a fourteen-year veteran with a spotless record, initiating baseless criminal charges, leaking confidential information to the media, using a racial slur to refer to Plaintiff, and refusing any remedial action after Plaintiff's complete exoneration—was extreme and outrageous, exceeding all possible bounds of decency.

273. Defendant Babkiewicz acted intentionally or with reckless disregard of the probability of causing Plaintiff severe emotional distress.

274. As a direct and proximate result of Defendant Babkiewicz's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress, including anxiety, humiliation, depression, and mental anguish.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the Court to enter judgment in his favor against Defendants, and to afford him the following relief:

A.   **Reasonable attorney's fees and costs;**

B.   **Compensatory Damages:**

   a.   Back pay, front pay, and lost benefits from August 2024 through the date of judgment, and continuing;

   b.   Compensatory damages for emotional distress, mental anguish, humiliation, loss of reputation, and loss of enjoyment of life;

   c.   Consequential damages, including lost retirement benefits and career advancement opportunities;

C.   **Punitive damages** against Defendant Babkiewicz in his individual capacity in an amount sufficient to punish his willful, malicious, and reckless conduct and to deter similar conduct in the future;

D.   **Equitable Relief:** To include:

   a.   Reinstatement to his former position of Sergeant with the Bluffton Police Department, or in the alternative, front pay;

   b.   Expungement of all adverse personnel records relating to the pretextual investigation and termination;

   c.   Restoration of all seniority, benefits, and retirement contributions;

E.   **Declaratory Relief:** A declaratory judgment that Defendants' actions violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and under state law;

43

F.   **Pre- and Post-Judgment Interest:** Pre-judgment and post-judgment interest at the highest lawful rate; and

G.   Such other legal and equitable relief as may be deemed just and proper under the circumstances.

Respectfully submitted,

s/Johanna Valenzuela
Jack E. Cohoon (Fed. ID No. 9995)
Johanna C. Valenzuela (Fed ID No. 11130)
BURNETTE SHUTT & MCDANIEL, PA
912 Lady Street, Second Floor (29201)
Post Office Box 1929
Columbia, South Carolina 29202
Telephone: (803) 904-7919
Fax: (803) 904-7910
jcohoon@burnetteshutt.law
jvalenzuela@burnetteshutt.law

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina

August 3, 2026